## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. _____**

**CRAIG SMITH, individually, and on behalf of**
**all others similarly situated,**

**Plaintiff,**

**v.**

**MINI MART, INC., a Wyoming Corporation,**
**d/b/a "Loaf 'N Jug," and**

**THE KROGER CO., an Ohio Corporation,**

**Defendants.**

---

## INDIVIDUAL AND CLASS ACTION COMPLAINT

---

The Plaintiff, Craig Smith, by counsel, the Sawaya and Miller Law Firm, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated, as his Individual and Class Action Complaint against the Defendants, Mini Mart, Inc., a Wyoming corporation doing business as "Loaf 'N Jug," and the Kroger Co., an Ohio corporation, states as follows:

### I.    NATURE OF ACTION

1.    In this action, Plaintiff Craig Smith ("Smith") alleges that his employer, Defendant Mini Mart, Inc. ("Mini Mart"), a Wyoming corporation doing business as "Loaf 'N Jug,"

a subsidiary of Defendant the Kroger Co., an Ohio corporation (collectively, "Kroger"), deprived him of his earned wages in violation of the Colorado Wage Act, Colo. Rev. Stat. § 8-4-105 and the Colorado Minimum Wage Order, 7 Colo. Code. Reg. § 1103-1 (collectively, "Colorado Wage and Hour Law").

2.      Smith brings this action to obtain damages for himself and a Class consisting of Kroger employees who were required to drive to the stores of Kroger's competitors to observe and record the gas prices of Kroger's competitors on a daily, weekly, or monthly basis, and/or were required to deliver money to a bank on a daily or weekly basis, and who were not compensated for the costs associated with such duties.

3.      By forcing the Smith and the members of his Class to incur out-of-pocket expenses, effectively deducting those amounts from their wages, Kroger violated the Wage and Hour Laws of the States of Colorado, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, and Wyoming. Colo. Rev. Stat. § 8-4-101 et seq.; Colo. Code. Regs. § 1103-1; Mont. Code Ann. § 39-3-201 et seq.; Neb. Rev. Stat. § 48-1228 et seq.; N.M. Stat. Ann. § 50-4-1 et seq.; N.D. Cent. Code § 34-14-01 et seq.; Okla. Stat. § 165.1 et seq.; Okla. Admin. Code 380:30-1-1 et seq.; S.D. Codified Laws § 60-11-8 et seq.; Wyo. Stat. Ann. § 27-4-101 et seq.; and Wyo. Admin. Code WSD LBRS Ch. 1, § 6.

4.      By forcing Smith and the members of his Class to incur such costs against their wages, Kroger also engaged in unjust enrichment in violation of the common laws of

Colorado, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, and Wyoming.

5.     Smith individually asserts that Kroger failed to pay overtime compensation to him for the many hours that he worked in excess of 40 per week and/or 12 hours per day, as required by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the Colorado Wage and Hour Law.

6.     Smith also asserts that Kroger failed to provide him with meal breaks and rest breaks that are mandated by Colorado Wage and Hour Law.

7.     On behalf of himself and all of the members of his proposed Class, Smith seeks declaratory and equitable relief, unpaid wages and compensatory damages, punitive damages, liquidated damages, statutory penalties, reasonable attorneys' fees and the costs of this action.

## II.     PARTIES

8.     Smith is a citizen of the United States and a resident of Colorado. The address of his counsel is 1600 Ogden Street, Denver, Colorado 80218.

9.     Mini Mart is a corporation organized under the laws of the State of Wyoming, with its principal office located at 442 Keeler Parkway, Pueblo, Colorado 81001. On information and belief, Mini Mart is a subsidiary of the Kroger Co., an Ohio Corporation with its principal office at 1014 Vine Street, Cincinnati, Ohio 45202.

10.     Mini Mart and the Kroger Co. (collectively, "Kroger") own and operate 175 "Loaf 'N Jug" convenience stores, with stores in Colorado, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, and Wyoming.

11.     At all times relevant to this Complaint, Smith was employed by Kroger at Loaf 'N Jug stores in Colorado.

### III.     JURISDICTION AND VENUE

12.     This Court has original jurisdiction over Smith's individual and class claims (Counts I and II) under 28 U.S.C. § 1332 because Smith is a citizen of Colorado, Mini Mart is a citizen of Wyoming and Colorado (*see* 28 U.S.C. § 1332(c)), and the Kroger Co. is a resident of Ohio. The matters in controversy include claims for the costs incurred by hundreds of Kroger employees, liquidated damages, and statutory penalties, which will exceed $75,000.00.

13.     This Court has original jurisdiction over Smith's individual FLSA claim (Count III) under 28 U.S.C. § 1331 because that cause of action arises under the laws of the United States.

14.     The Court has supplemental jurisdiction over Smith's individual state claims (Counts IV and V) under 28 U.S.C. § 1367, because those causes of action are so related to Smith's FLSA claim that they form part of the same case or controversy under Article III of the United States Constitution.

15.     Venue is proper in this Court because a substantial part of the events or omissions

giving rise to Smith's claims occurred in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     GENERAL ALLEGATIONS

16.     Smith was hired by Kroger as an "Associate" on January 21, 2015.

17.     Through hard work and dedication, Smith was promoted, first to a position Kroger

called "Assistant Manager," and then to a position Kroger referred to as "Manager."

18.     Notably, neither the Assistant Manager position nor the Manger position Smith

held involved the supervision of other employees or supervisory duties.

19.     From July 22, 2016 until December 22, 2016, Smith was the "Manager" of Loaf

'N Jug Store No. 22 ("the Store"), which is located at 5950 S Holly Street, Greenwood

Village, Colorado 80111.

### *Smith's Hours of Work*

20.     During the time that Smith was working at the Store, Kroger constantly forced him

to work alone, without hiring any other employees to work at the Store.

21.     As a result of Kroger's failure to adequately staff the Store, Smith was severely

overworked.

22.     Smith worked 80-90 hours per week during all, or nearly all, of the weeks that he

worked at the Store.

23.    Most weeks, Smith was scheduled to work, and did work, all seven days of the week.

24.    Most days, Smith arrived at the Store at 3:45 a.m. and worked until at 4:00 p.m. or later.

25.    Smith generally worked without meal breaks or rest periods.

26.    Smith repeatedly asked his supervisors to hire additional staff for the Store so that he could have a reasonable schedule. Kroger refused to do so, however, providing only temporary assistance from employees who did not report to Smith.

27.    During the five months that Smith worked at the Store, Kroger paid Smith a salary of $800.00 per week.

28.    Smith did not receive overtime compensation for the hours he worked in excess of 40/week or 12/day at any time between July 22, 2016 and the end of his employment.

29.    Smith resigned his employment on December 22, 2016, after repeatedly, unsuccessfully imploring Kroger to provide him with staff support and a reasonable schedule.

### Smith's and Class Members' Driving Duties

30.    At all times relevant to this Complaint, Kroger pursued a policy or practice of requiring certain Loaf 'N Jug employees ("the Class Members") to drive to the stores of Kroger's competitors to observe and record the gas prices being charged at those stores.

31.    Smith and the other Class Members were required to perform these duties on a daily or weekly basis.

32.    During his time as "Assistant Manager," Smith was required to check the prices of between four and eight stores at least once per week. During each trip, Smith had to drive between eight and fifteen miles.

33.    During six of the months that Smith was working at the Store, he was required to check the prices of four stores five times per week. Smith drove approximately nine miles for each trip.

34.    Because Kroger's competitors were known to post inaccurate prices on their store signs, i.e., prices that were higher or lower than the prices applied at their gas pumps, Smith had to drive up to a gas pump at each station to view the competitors' actual prices during each trip. As a result, each trip took at least 20 minutes to complete.

35.    At all times relevant to this Complaint, Kroger also pursued a policy or practice of requiring the Class Members to deliver money to Kroger's bank for Kroger.

36.    The Class Members were required to take money to the bank on a daily, near-daily, or weekly basis.

37.    The Class Members' trips to the bank led the Class Members to drive dozens of additional miles each week.

38.    For example, Smith's bank trips required him to drive more than 29 miles per week.

39.    During 2016 alone, Smith drove more than 2,119 miles for Kroger.

40.    Smith and the Class Members were required to use their own vehicles to make their daily/weekly/monthly trips to competitors' stores and to the bank.

41.    Smith's and the Class Members' cars incurred substantial wear-and-tear during the trips Kroger required them to make.

42.    Smith and the Class Members were required to pay for gas for their vehicles for the trips Kroger required them to make.

43.    Smith and the Class Members were also required to pay for the maintenance and other expenses they incurred based on Kroger's requirements.

44.    Smith and the Class Members were not reimbursed by Kroger for these out-of-pocket expenses, and as a result, the wages paid to them by Kroger were constantly reduced by the mandatory costs of performing their driving duties.

45.    By compelling Smith and the Class Members to drive large distances without reimbursement, Kroger effectively deducted thousands of dollars from each Class Members' wages during each year of his/her employment.

### *Smith's Actions Prior to Filing*

46.    On February 15, 2017, Smith sent a letter to Kroger, through its registered agent. In his letter, Smith demanded that Kroger pay him for miles he had driven, and that it "pay all of the other Managers and Assistant Managers for the mileage they had to incur as part of their jobs."

47.     Kroger received Smith's letter on February 17, 2017.

48.     Kroger refused to comply with Smith's demand by failing to pay him or the members of his Class any part of the wages that were due to them.

## B.     CLASS ALLEGATIONS

49.     Smith brings Counts I and II of this Complaint as class claims pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following proposed Class:

> **All Kroger employees who were required by Kroger to drive to the stores of Kroger's competitors to observe and/or record the gas prices of Kroger's competitors on a daily/weekly/monthly basis, and/or were required to deliver money to the bank for Kroger on a daily/weekly basis, and who were not compensated for the costs associated with such duties.**

50.     Smith's claims are properly brought as a class action under Rule 23 because the proposed Class satisfies the Rule's requirements for numerosity, commonality, typicality, and adequacy, as set forth below.

### *Numerosity*

51.     The Class is so numerous that joinder of all members is impracticable. Kroger has at least 175 Loaf 'N Jug stores. During the past two years, each store has had at least one employee who was subject to Kroger's requirement to travel to competitors' stores. As such, there are hundreds of potential Class Members.

*Commonality*

52.     There are questions of law and fact that are common to the Class, which questions predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to:

    a.  Whether Kroger pursued a policy or practice of requiring Class Members to drive to competitors' stores on a daily/weekly/monthly basis to record the gas prices of Kroger's competitors;

    b.  Whether Kroger pursued a policy or practice of requiring Class Members to deliver money to the bank for Kroger on a daily/weekly basis;

    c.  Whether Class Members incurred out-of-pocket expenses to comply with Kroger's policies or practices of requiring Class Members to drive to competitors' stores and to the bank;

    d.  Whether Kroger reimbursed Class Members for the gas, mileage, maintenance, and other expenses occasioned by Class Members' compliance with Kroger's policies or practices;

    e.  Whether Kroger's policies or practices violated the wage and hour laws of the States in which it operated its stores;

    f.  Whether Kroger engaged in unjust enrichment under the common laws of the States in which it operated its stores; and

g.  The nature and extent of Class Members' damages under the relevant statutes, regulations, and common law.

### *Typicality*

53.    The claims of Smith are typical of the claims of the Class. Like all of the Class Members, Smith was required to drive to the stores of Kroger's competitors to observe and record the gas prices of Kroger's competitors, and was required to deliver money to the bank for Kroger, but was not compensated for the costs associated with such duties.

54.    Moreover, the defenses and legal theories Kroger will assert in response to such claims are likely to be the same as to all Class Members.

### *Adequacy*

55.    Smith will fairly and adequately protect the interests of the Class. He has retained the Sawaya & Miller Law Firm, counsel that is experienced in class action litigation and wage and hour law.

56.    Smith and his counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Class, and have adequate resources to assure that the interests of the Class will not be harmed.

### *Superiority of Class Action*

57.    Additionally, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of

conduct for Kroger, or adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interest.

58.     Kroger has or refused to act on grounds generally applicable to the Class by requiring all Class Members to drive to the stores of Kroger's competitors to record gas prices and requiring Class Members to drive to the bank to deliver money for Kroger, but refusing to compensate the Class Members for the costs associated with such duties. As such, final injunctive or declaratory relief with respect to the Class as a whole is appropriate.

59.     No member of the Class has expressed any interest in controlling the prosecution of a separate action.

60.     On information and belief, no other litigation concerning the subject matter of this action has been commenced by any member of the Class.

//

//

//

//

## V.    INDIVIDUAL AND CLASS CLAIMS

## COUNT I:

### UNLAWFUL WAGE DEDUCTIONS IN VIOLATION OF STATE WAGE AND HOUR LAWS

**Colo. Rev. Stat. § 8-4-101 et seq.**
**7 Colo. Code. Regs. § 1103-1**
**Mont. Code Ann. § 39-3-201 et seq.**
**Neb. Rev. Stat. § 48-1228 et seq.**
**N.M. Stat. Ann. § 50-4-1 et seq.**
**N.D. Cent. Code § 34-14-01 et seq.**
**Okla. Stat. § 165.1 et seq.**
**Okla. Admin. Code 380:30-1-1 et seq.**
**S.D. Codified Laws § 60-11-8 et seq.**
**Wyo. Stat. Ann. § 27-4-101 et seq.**
**Wyo. Admin. Code WSD LBRS Ch. 1, § 6**

61.    Smith hereby incorporates the allegations in each of the above paragraphs as though fully set forth herein.

62.    At all times relevant to this Complaint, Kroger was Smith's "employer," under the Wage and Hour Laws of the States of Colorado, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota and Wyoming ("State Wage and Hour Laws"). Colo. Rev. Stat. § 8-4-101 et seq. and 7 Colo. Code. Regs. § 1103-1; Mont. Code Ann. § 39-3-201 et seq.; Neb. Rev. Stat. § 48-1228 et seq.; N.M. Stat. Ann. § 50-4-1 et seq.; N.D. Cent. Code § 34-14-01 et seq.; Okla. Stat. § 165.1 et seq. and Okla. Admin. Code 380:30-1-1 et seq.; S.D. Codified Laws § 60-11-8 et seq.; Wyo. Stat. Ann. § 27-4-101 et seq. and Wyo. Admin. Code WSD LBRS Ch. 1, § 6.

63.   At all times relevant to this Complaint, Smith and the Class Members were "employees" of Kroger under the State Wage and Hour Laws.

64.   The State Wage and Hour Laws require employers to pay employees all earned wages in a timely manner, without imposing improper deductions or offsets. Colo. Rev. Stat. § 8-4-105; 7 Colo. Code. Regs. § 1103-1:9; Mont. Code Ann. § 39-3-204; Neb. Rev. Stat. § 48-1230; N.M. Stat. Ann. § 50-4-2; N.D. Cent. Code § 34-14-04.1.; Okla. Admin. Code 380:30-1-7.; S.D. Codified Laws § 60-11-9; and Wyo. Admin. Code WSD LBRS Ch. 1, § 6.

65.   At all times relevant to this Complaint, Kroger pursued a policy or practice of requiring Smith and the Class Members to drive to the nearby stores of Kroger's competitors on a daily, weekly, or monthly basis to observe and record the gas prices being charged by Kroger's competitors.

66.   At all times relevant to this Complaint, Kroger also pursued a policy or practice of requiring the Class Members to deliver money from their stores to the bank on a daily basis.

67.   Smith drove more than 2,119 miles for Kroger during 2016.

68.   The other Class Members were required to drive similar distances during each year of their employment with Kroger.

69.   Smith and the Class Members were required to use their own vehicles to make their daily/weekly trips to the stores of Kroger's competitors and to the bank.

70.    Smith and the Class Members were required to pay for the gas and maintenance for the vehicles they used for their daily/weekly/monthly trips.

71.    Kroger did not compensate Smith and the Class Members for the gas, maintenance, wear and tear, and other costs that Smith and Class Members incurred when they drove to the stores of Kroger's competitors and to the bank.

72.    By requiring Smith and the Class Members to incur costs for gas, maintenance, wear and tear, and other expenses during their mandated trips, Kroger deprived Class Members of earned wages in violation of the State Wage and Hour Laws.

73.    Kroger is therefore liable to Smith and the Class Members for actual damages, compensatory damages, liquidated damages, punitive damages, penalties, reasonable attorneys' fees, and the costs of this action.

## COUNT II:

### UNJUST ENRICHMENT

74.    Smith hereby incorporates the allegations in each of the above paragraphs as though fully set forth herein.

75.    At all times relevant to this Complaint, Kroger pursued a policy or practice of requiring Smith and the Class Members to drive to the nearby stores of Kroger's competitors on a daily, weekly, or monthly basis to observe and record the gas prices being charged by Kroger's competitors.

76.     At all times relevant to this Complaint, Kroger also pursued a policy or practice of requiring the Class Members to deliver money from their stores to the bank on a daily basis.

77.     Kroger's policies or practices enabled Kroger to enjoy the benefits of Smith's and the Class Members' efforts and expenditures at the expense of Smith and the Class Members.

78.     As a result of Kroger's conduct, Smith and the Class Members were deprived of compensation to which they were equitably entitled.

79.     Kroger had no valid justification for depriving Smith and the Class Members of the compensation they had earned, and under these circumstances it would be unjust for Kroger to retain the benefits of Smith's and the Class Members' expenses without compensation to them.

80.     Accordingly, if the Court finds that any one of the State Wage and Hour Laws do not provide a remedy to Smith and the Class Members, Kroger is nevertheless liable to Smith and the Class Members for unjust enrichment in violation of the common laws of Colorado, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, and Wyoming.

81.     Specifically, Smith and the Class Members are entitled to their actual damages, attorney's fees, and the costs of this action under the doctrine of quantum meruit.

# VI.    SMITH'S INDIVIDUAL CLAIMS

## COUNT III:

### FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

### 29 U.S.C. § 201 et seq.

82.    Smith hereby incorporates the allegations in each of the above paragraphs as though fully set forth herein.

83.    At all times relevant to this Complaint, Mini Mart and the Kroger Co. ("Kroger") were "employers," as defined by the FLSA. 29 U.S.C. § 203(d).

84.    At all times relevant to this Complaint, Smith was an "employee" of Kroger, as defined by the FLSA. 29 U.S.C. § 203(e).

85.    At all times during his employment with Kroger, Smith was engaged in commerce, or an enterprise engaged in commerce. *See* 29 U.S.C. §§ 203(b) and (s).

86.    The FLSA requires an employer to pay its employee overtime compensation of one and one-half times the employee's regular rate of pay for every hour the employee works in excess of 40 hours per week. 29 U.S.C. § 207.

87.    From July 22, 2016 to December 22, 2016, Smith worked 80-90 hours at the Store during every, or almost every, week. Kroger nevertheless failed to provide Smith with any overtime compensation.

88.     At all times relevant to this Complaint, Kroger was aware that it was required to pay Smith overtime compensation for all of the hours he worked in excess of 40 hours per week.

89.     By failing to pay overtime compensation to Smith, Kroger violated his rights under the FLSA, and is therefore liable to Smith for unpaid wages, liquidated damages, reasonable attorneys' fees, and the costs of this action. 29 U.S.C. § 216.

## <u>COUNT IV:</u>

### FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF COLORADO WAGE AND HOUR LAW

### Colo. Rev. Stat 8-4-101 et seq.
### Colo. Code Regs. § 1103-1:4

90.     Smith hereby incorporates the allegations in each of the above paragraphs as though fully set forth herein.

91.     At all times relevant to this Complaint, Mini Mart and the Kroger Co. ("Kroger") were "employers," as defined by the Colorado Wage Act. Colo. Rev. Stat. § 8-4-101(6).

92.     At all times relevant to this Complaint, Smith was an "employee" of Kroger under the Colorado Wage Act. Colo. Rev. Stat. § 8-4-101(5).

93.     At all times relevant to this Complaint, Smith and Kroger were engaged in the retail and service industry, and were thus covered by Colorado's Minimum Wage Order. 7 Colo. Code. Regs § 1103-1.

94.     Under the Colorado Minimum Wage Order, "employees shall be paid time and one-half of the regular rate of pay for any work in excess of: (1) forty (40) hours per workweek; (2) twelve (12) hours per workday, or (3) twelve (12) consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages." Colo. Code Regs. § 1103-1:4.

95.     From July 22, 2016 to December 22, 2016, Smith worked 80-90 hours at the Store during every, or almost every, week. Kroger nevertheless failed to provide Smith with any overtime compensation.

96.     At all times relevant to this Complaint, Kroger was aware that it was required to pay Smith overtime compensation for all of the hours he worked in excess of 40 hours per week or 12 hours per day.

97.     By failing to pay overtime compensation to Smith, Kroger violated his rights under the Colorado Wage and Hour Law.

## COUNT V:

### FAILURE TO PROVIDE MEAL BREAKS AND REST BREAKS IN VIOLATION OF COLORADO WAGE AND HOUR LAW

**Colo. Rev. Stat. § 8-4-101 et seq.
7 Colo. Code Regs. §§ 1103-1(7)-(8)**

98.     Smith hereby incorporates the allegations in each of the above paragraphs as though fully set forth herein.

99.     As set forth above, Smith was an "employee" of Kroger, who was an "employer" in a covered industry under Colorado's Wage and Hour Law. C.R.S. §§ 8-4-101(5)-(6); 7 C.C.R. §§ 1103-1(1)-(2).

100.    Under the Colorado Wage and Hour Law, Smith was entitled to an uninterrupted, duty-free, 30-minute meal break during every work shift that lasted five hours or more. 7 Colo. Code Regs. § 1103-1(7).

101.    Smith was also entitled to a compensated 10-minute rest break "for each four (4) hours or major fractions thereof" that he worked at the Store. 7 C.C.R. § 1103-1(8).

102.    During his time at the Store, Smith consistently worked more than 12 hours per day. He was nevertheless prevented from taking duty-free meal breaks and rest breaks because Kroger did not adequately staff the Store.

103.    By preventing Smith from taking meal breaks and rest breaks, Kroger violated the Colorado Wage and Hour Law.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Craig Smith, on behalf of himself and all of the members of his Class, respectfully asks the Court to find in his favor and in addition award the following to him and to his Class:

      A.  A declaratory judgment condemning Kroger's violations of the State Wage and Hour Laws and the FLSA;

B.  Actual and compensatory damages, consisting of the costs and expenses Smith and the Class Members were forced to incur to comply with Kroger's policies or practices requiring them to drive to competitors' stores and to the bank;

C.  Punitive, liquidated, and/or statutory damages for Kroger's violations of the rights of Smith and the Class Members under the Wage and Hour Laws of the States of Colorado, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, and Wyoming;

D.  All applicable penalties for Kroger's violations of the State Wage and Hour Laws;

E.  Overtime compensation to Smith for all of the hours he worked in excess of 40 hours per week or 12 hours per day;

F.  Liquidated damages to Smith in an amount equal to the overtime compensation Kroger failed to pay him;

G.  Monetary damages compensating Smith at his hourly rate for each 10-minute rest break that was not provided to him;

H.  An incentive award to Smith for bringing this action;

I.  Reimbursement for Smith's reasonable attorney's fees and the costs of this action; and

J.  Any other and further relief that may be equitable and just.

Respectfully submitted,

CRAIG SMITH, On behalf of himself and
all others similarly situated
By:

*Adam M. Harrison*

_____
David H. Miller, Esq.
Adam M. Harrison, Esq.
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
Telephone: 303-839-1650
E-mail: DMiller@sawayalaw.com
AHarrison@sawayalaw.com
*Counsel for Plaintiff*